NEWMAN & COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 74288. Filed May 12, 1961.

*Fred L. Rosenbloom, Esq.*, for the petitioner.
*David E. Crabtree, Esq.*, for the respondent.

WITHEY, *Judge:* The respondent determined deficiencies in petitioner's income tax for the years and in the amounts as follows:

| Fiscal year ended Nov. 30— | Deficiency |
| --- | --- |
| 1952 | $9,257.08 |
| 1953 | 57,028.46 |
| 1954 | 753.30 |

The issues presented for our decision are (1) whether petitioner is entitled to compute its excess profits credit under section 444 of the Internal Revenue Code of 1939 and (2) in the alternative, whether petitioner is entitled to compute its excess profits credit under section 445 of the 1939 Code as a new corporation, using the industry rate of return prescribed for manufacturers of paper and allied products.

### FINDINGS OF FACT.

Some of the facts have been stipulated and are found accordingly.

The petitioner is a corporation organized under the laws of Pennsylvania on November 20, 1919. Its principal office is located at 6101 Tacony Street, Philadelphia, Pennsylvania.

Petitioner filed its income tax returns for the fiscal years ended November 30, 1952, 1953, and 1954, with the director of internal revenue at Philadelphia. From the time of its incorporation until March 1944, petitioner was engaged in the manufacture and sale of paperboard, principally of the type known to the industry as setup boxboard. During this period its operations were conducted in a plant located at Delaware Avenue and Tasker Street in Philadelphia.

During the 1930's petitioner's plant and method of manufacture became outmoded because of the development of a new type of paperboard for use in manufacturing boxes known as folding boxboard. Folding boxboard is paperboard used to manufacture cartons of paper boxes which are shipped flat or in a knocked-down condition. Setup boxboard, on the other hand, is paperboard normally made from wastepaper and used in the manufacture of paper boxes which are in a setup position when delivered to the buyer. Folding boxboard, which usually is made from woodpulp and old newspapers, is less expensive to manufacture than setup boxboard. Folding boxboard can be manufactured almost entirely by machinery whereas setup boxboard involves considerable hand labor. Printing can be placed directly on folding boxboard but not on setup boxboard.

The paperboard industry has changed since the early 1930's from one engaged predominantly in the manufacture of setup boxboard to an industry engaged primarily in the production of folding boxboard. The petitioner, however, did not possess sufficient land, plant space, powerplants, and other machinery to enable it to convert to the manufacturing of folding boxboard in its original location.

Consequently, the officers of petitioner decided to sell the old papermill and construct a new plant in a different location. On March 17, 1944, petitioner sold its paperboard manufacturing plant and other assets to the Colonial Paper Board Company, a company completely unrelated to petitioner or its shareholders. The proceeds realized from the sale of the old plant were invested by petitioner in securities, primarily Government bonds. After the sale of its plant, petitioner in 1944 leased an office in the Drexel Building in Philadelphia, which it maintained until 1950.

On December 17, 1946, petitioner acquired land at 6101 Tacony Street, Philadelphia, for the purpose of constructing a new paperboard-manufacturing plant. Following the acquisition of this land petitioner proceeded with plans for the construction of a new plant and engaged engineers who drew the plans for the construction of the mill property. It also acquired the new machinery and equipment necessary for the manufacture of folding boxboard. The construction of the new plant was delayed because of the unavailability of materials and because of petitioner's refusal to enter into construction contracts which contained escalator clauses to permit an increase in the

contract price in the event of an increase in the cost of material. Petitioner acquired three used turbines in 1947 which were stored in a warehouse in Philadelphia until completion of the new plant. New turbines at that time were unavailable and could not have been delivered to petitioner in less than 5 or 6 years from the time the order was placed.

During the period March 17, 1944, through November 30, 1948, petitioner imported and sold some woodpulp, the volume of the sales of which did not exceed 5 percent of its sales volume during the years when it was manufacturing paperboard. During the fiscal years ended November 30, 1948 through 1951, petitioner received no gross receipts from the sale of paper products.

Actual construction of petitioner's new plant began in 1950. The plant covered an area of 10 acres. The foundations are supported by more than 1,000 pilings driven into the ground as far as 60 feet. The paperboard machine constructed by petitioner for the manufacture of folding boxboard is approximately 450 feet long and weighs between 1,400 and 1,500 tons.

During the period March 17, 1944, until March 1, 1952, petitioner's manufacturing activities were suspended. Its manufacturing operations in the production of folding boxboard began on or about March 1, 1952.

On December 31, 1946, petitioner's real property and depreciable tangible property, and the unadjusted bases of such property were as follows:

| Item | Basis |
|---|---|
| Land, Water Street, Philadelphia | $20,475.00 |
| Land, 6101 Tacony Street, Philadelphia | 40,345.75 |
| Equipment for new mill | 2,192.00 |
| Engineering for new mill | 68.00 |
| Automotive equipment | 5,957.15 |
| Office equipment | 1,315.81 |
| Total | 70,353.71 |

All of the foregoing property was acquired for use in petitioner's paperboard-manufacturing business and has been so used.

During the 3-year period from January 1, 1947, to December 31, 1949, petitioner acquired additional property at a cost of more than $100,000, including the following items:

| Item | Basis |
|---|---|
| Land, 6101 Tacony Street, Philadelphia | $3,892.03 |
| Equipment for new mill | 68,791.29 |
| Engineering for new mill | 16,781.45 |
| Fence on Tacony Street property | 5,397.43 |
| Small tools | 922.49 |
| Automotive equipment | 4,810.75 |
| Office equipment | 35.00 |
| Total | 100,630.44 |

The foregoing property was acquired for use in petitioner's paper-board-manufacturing business and has been used therein since March 1, 1952.

On December 31, 1949, the unadjusted basis of petitioner's total real property and depreciable tangible property was $170,859.15.

During the fiscal year ended November 30, 1949, petitioner received no gross receipts from the manufacture or sale of paperboard or other paper products. Its gross receipts for that year amounted to $46,241.39 and were derived from the following sources:

| | |
|---|---|
| Interest on U.S. Treasury bonds and notes | $44,093.26 |
| Rent | 1,488.65 |
| Dividends | 638.80 |
| Purchase discount | 20.68 |
| Total | 46,241.39 |

For the fiscal years ended November 30, 1952, 1953, and 1954, petitioner's total gross receipts, together with its gross receipts from the manufacture and sale of paperboard, were as follows:

| Year ended Nov. 30— | Total gross receipts | Gross receipts from paperboard manufacturing |
|---|---|---|
| 1952 | $1,400,366.77 | $1,358,797.58 |
| 1953 | 2,083,971.67 | 2,043,420.89 |
| 1954 | 2,235,485.35 | 2,201,933.45 |

Petitioner made a timely application for the benefits of section 444 of the 1939 Code by filing with the director in Philadelphia on June 23, 1958, amended income tax returns for the fiscal years ended November 30, 1952, 1953, and 1954, together with a statement entitled "Memorandum of Right of Company To Compute Excess Profits Credits Under the Provisions of Section 444 Internal Revenue Code (1939)."

Petitioner made timely applications for the benefits of section 445 of the 1939 Code by filing Schedule EP–5 (Form 1120) and a written statement together with its income tax returns for the fiscal years ended November 30, 1952, 1953, and 1954.

OPINION.

Petitioner contends that it has satisfied the requirements of section 444 of the 1939 Code and is entitled to compute its excess profits credit under that section using the industry base period rate of return for a manufacturer of paper and allied products under section 447(c). In the event we do not sustain its position based on sections 444 and 447, petitioner claims in the alternative that it is entitled to compute its excess profits credit under section 445 of the 1939 Code as a new corporation.

The respondent has taken the position that petitioner is entitled to utilize only the invested capital method of computing its excess profits credit pursuant to section 436 of the Code.

Section 435(c) of the Code provides that the average base period net income may be computed under section 444 if the taxpayer meets the requirements imposed by that section.[1]

Section 444(a) provides:

SEC. 444. AVERAGE BASE PERIOD NET INCOME—INCREASE IN CAPACITY FOR PRODUCTION OR OPERATION.

(a) IN GENERAL.—If a taxpayer which commenced business on or before the first day of its base period establishes that, during the 36-month period ending on the last day of its base period, there was an increase, as defined in subsection (b), in its capacity for production or operation, the taxpayer's average base period net income determined under this section shall be the amount computed under subsection (c).

The phrase "commenced business" in section 444(a) refers to the business in which the taxpayer was engaged when producing income subject to excess profits taxes, not to some other business in which it may have been engaged in years prior to the base period (January 1, 1946, to December 31, 1949). Since section 444(a) has reference solely to the business in which the taxpayer was engaged during its excess profits tax years and since petitioner did not commence that business until after the beginning of the base period, the record here fails to support its contention that it has met the requirements imposed by section 444(a) of the Code.

Further, even if petitioner had established that it had satisfied the requirements of section 444(a), we nevertheless are of the opinion that it is not entitled to compute its excess profits credit under section 444 because it was not engaged in an active business during 1949 and its activities during that year are not classifiable under any of the industry categories listed under section 447(c).

In the alternative, petitioner claims that it qualifies as a new corporation within the meaning of section 445 of the Code since it commenced business after the first day of its base period. In the event we find that it so qualifies, it would be entitled to compute its excess profits credit under section 445(b)(1)(A)[2] utilizing the industry base

---

[1] SEC. 435. EXCESS PROFITS CREDIT—BASED ON INCOME.

(c) AVERAGE BASE PERIOD NET INCOME—DETERMINATION.—For the purpose of this section the average base period net income of the taxpayer shall be the amount determined under subsection (d), subject to the exception that if the taxpayer is entitled to the benefits of subsection (e) of this section, or section 442, 443, 444, 445 or 446 or any subsection of section 459, then the average base period net income shall be the amount determined under subsection (d) or (e) or under such section or subsection, whichever results in the lesser tax under this subchapter for the taxable year for which the tax under this subchapter is being computed.

[2] SEC. 445. AVERAGE BASE PERIOD NET INCOME—NEW CORPORATION.

(b) AVERAGE BASE PERIOD NET INCOME.—The average base period net income of a new corporation determined under this section shall be computed as follows:

(1) For the purpose of determining the excess profits credit for any of the taxpayer's first three taxable years which is a taxable year under this subchapter—

period rate of return under section 447(c) for manufacturers of paper and allied products. The respondent contends that section 445 could not have any application whatever to petitioner since it originally was incorporated in 1919 and commenced the manufacture of paperboard in that year.

Section 445(a) describes a "new corporation" as follows:

SEC. 445(a) NEW CORPORATION.—A taxpayer which commenced business after the first day of its base period shall, except as provided in subsection (g), be considered a new corporation for the purposes of this section, and its average base period net income determined under this section shall be the amount computed under subsection (b).

The language of section 445(a) clearly shows that the section includes both corporations which commenced business during the base period (January 1, 1946, to December 31, 1949) and those which commenced business subsequent thereto. This comprehensiveness of statutory language expresses the intention of Congress to extend relief treatment to all new corporations commencing business after January 1, 1946, regardless of the fact that such commencement may have occurred after the base period expired. H. Rept. No. 3142, 81st Cong., 2d Sess., p. 22 (1950), and S. Rept. No. 2679, 81st Cong., 2d Sess., p. 25 (1950).

Petitioner ceased the manufacture of paperboard on March 17, 1944. After acquiring a new location, a new plant, and new equipment, it reentered the paperboard-manufacturing business in 1952, commencing operations on March 1 of that year. However, under the respondent's regulations, the petitioner may be deemed to have commenced business at a time prior to the commencement of its manufacturing operations, such as the date of acquisition of assets necessary to the manufacture of paperboard, or the date in 1950 when construction of its new plant was begun:

If the activities of the corporation have advanced to the extent necessary to establish the nature of its business operations, it will be deemed to have commenced business. For example, the acquisition of operating assets which are necessary to the type of business contemplated may constitute the commencement of business. [Regs. 130, sec. 40.445–1(a)(2), 1955–1 C.B. 420.]

Since all of the above-mentioned events relevant to determining the time petitioner commenced business occurred subsequent to January 1, 1946, it is clear that it is "A taxpayer which commenced business after the first day of its base period" within the meaning of section 445(a).

Under the wording of section 445(a), we are unable to see how the fact that petitioner existed as a corporation prior to the time it commenced business, or the fact that it had previously engaged in the

---

(A) By multiplying the amount of the total assets for such taxable year (determined under subsection (c)), held by the taxpayer in good faith for the purposes of the business by the base period rate of return proclaimed by the Secretary under section 447, for the taxpayer's industry classification.

paperboard-manufacturing business and then ceased its operations in years prior to the beginning of its base period, can have any effect on its status as a "new corporation."

Petitioner's excess profits income during the years in issue was derived from the manufacture and sale of paperboard. Since it was inactive during the base period years, some substitute standard must be used in computing its excess profits credit. The average rate of return experienced during the base period years by other paperboard manufacturers would appear to be the most appropriate standard and the one in harmony with the statutory pattern and purpose. Thus, to find that petitioner is a new corporation under section 445(a) is not only to follow literally the language of that section but also to effectuate the purpose and policy of the statute.

We accordingly hold that petitioner is a "new corporation" within the meaning of section 445(a) of the Code and is entitled to compute its excess profits credit under section 445(b)(1)(A) using the industry base period rate of return under section 447(c) for manufacturers of paper and allied products.

*Decision will be entered under Rule 50.*